# United States District Court
# for the Southern District of Georgia
# Savannah Division

FILED U.S. DISTRICT COURT BRUNSWICK DIV. 2018 AUG -1 PM 2:13 CLERK D. Taylor SO. DIST. OF GA

CECILIA STROBERT,      *

    Plaintiff,      *

v.      *      No. 4:16-CV-116

GEORGIA-PACIFIC CORP.,      *

    Defendant.      *

## ORDER

Before the Court is Defendant Georgia-Pacific Consumer Products LP's ("Georgia-Pacific") Motion for Summary Judgment. Dkt. No. 21. The Court also received and considered Plaintiff Cecilia Strobert's ("Strobert") Motion in Response and Georgia-Pacific's Reply in Opposition. Dkt. Nos. 25, 27. The Motion for Summary Judgment is now ripe for review.

### FACTUAL BACKGROUND

Georgia-Pacific hired Cecilia Strobert as a fiber handler on April 11, 2011. Dkt. No. 1, ¶¶ 9-10. In that capacity, Strobert was expected to operate a forklift, pick up paper and wires and move them into the pulp pit, and ensure that the correct kind of paper was being put into the pulp pit. Dkt. No. 21-3, 40:2-9. Strobert worked "swing shift," meaning twelve hour

shifts—sometimes during the day, and sometimes at night. Id. at 40:20-25; 41:1-12.

While employed with Georgia Pacific, Strobert took four medical leaves of absence from work. In January 2012, she broke her ankle and was granted medical leave by Georgia-Pacific; she returned six months later. Id. at 41:19-42:10, 42:14-43:17. In August 2013, Plaintiff took medical leave for asthma; she returned roughly one month later. Id. at 43:18-23; 44:12-17; 44:15-17. She took her third medical leave—also for asthma—from September to December 2013. Id. at 45:21-46:8; 46:1-13; 47:5-9. Seventeen days after returning from leave, on January 6, 2014, Strobert took her fourth medical leave: this time for vertigo. Id. at 46:14-17, 4:2-13. The fourth medical leave lasted six months. Id. at 48:2-15. In June 2014, Strobert provided Georgia-Pacific with a Work Ability form authorizing her return to work at the end of June, but the form included a recommendation that, "if possible," Strobert "be on day shift, not swing shift, due to sleep issues on swing shift." Id. at 54:19-24. At the same time, Strobert was actively taking medication that made her drowsy. Id. at 69:20-70:6; 74:21-75:3; 95:6-10.

Strobert was cleared to return to work on June 30, 2014. Id. at 89:1-10, 13:14. At the beginning of June, Shawn Dolan—an employee in Human Resources for Georgia-Pacific—sought more information about two of Strobert's physician's recommendations:

his recommendation that she only work the day shift and his prescription of migraine medication that had the effect of making Strobert sleepy. Dkt. No. 21-7, 34:3-8; Dkt. No. 21-3, 69:20-70:6; 95:6-10. He reached out to Strobert's physician for clarification. Dkt. No. 21-7, 7:18, 13:16-17, 15:24-16:1, 16:8-12, 17:6-8. That response went unanswered. Dolan never heard from either Strobert herself or from her physician. Id. at 20:17-19, 21:1-4, 27:16-22, 28:15-23, 33:3-7, 36:23-24, 38:9-12.

In October 2014, Strobert was admitted into Coastal Harbor Hospital where she was diagnosed with depression, bipolar disorder, and anxiety. Dkt. No. 21-3, 57:10-20; 60:4-8. She has since been unable to work and has not made any attempt to find employment. Id. at 60:17-21; 63:21-64:4. After November 2014, Strobert did not call or communicate with Dolan regarding her return to work. Id. at 84:24-85:18.

On May 20, 2016, Strobert brought a claim against Georgia-Pacific. Dkt. No. 1. Strobert claimed that Georgia-Pacific unlawfully discriminated against her under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 et seq. Id. p. 2.

## LEGAL STANDARD

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there

is an absence of evidence to support the nonmoving party's case. Id. at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986). The nonmovant may satisfy this burden in two ways. First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting Celotex Corp., 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. Where the nonmovant instead attempts to carry this burden with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981).

**DISCUSSION**

"[T]o establish a prima facie case of discrimination under the ADA, [the plaintiff] must demonstrate that she (1) is disabled, (2) is a qualified individual, and (3) was subjected to unlawful discrimination because of her disability." Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).

Defendant argues that Strobert has neither satisfied these requirements, nor engaged in the process that the Act requires. To the first argument, Defendant urges that Plaintiff has not met her burden of proving that she was disabled. To the second, Defendant asserts that Plaintiff failed to engage in the interactive process required by law. Dkt. No. 27, p. 8.

**I. Whether Plaintiff is disabled under the ADA**

The initial inquiry is whether Strobert's medical issues constitutes an actual-impairment, as recognized by the ADA. According to the ADA, an actual-impairment disability is "a physical or mental impairment that substantially limits one or more of the major life activities of such individual." 42 U.S.C. § 12102(2). This is a threshold issue; if an individual is not "disabled," there is no need to continue the inquiry. See, e.g. Roth v. Lutheran Gen. Hosp., 57 F.3d 1146, 1454 (7th Cir. 1995).

Both parties agree that Strobert suffers from several medical conditions that have had profound impacts upon her life. But for a condition to be recognized as an impairment under the

5

ADA, Strobert's impairments must substantially limit one or more of her "major life activities:" functions defined by statute "such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i)(2007). This Circuit considers an impairment that affects the ability to work to be a major life activity. Carruthers v. BSA Advert., Inc., 357 F.3d 1213, 1216 (11th Cir. 2004).

The face of the Complaint does not identify the actual impairment from which Strobert alleges she faced discrimination. See Dkt. No. 1 ¶ 24 (alleging generally that Strobert has been "subjected to discrimination based upon her disability"). Circumspectly, however, Strobert seems to identify her vertigo as an impairment that substantially limits her ability to work. Dkt. No. 1, p. 3 ("On or about January 6, 2011, Plaintiff was hospitalized and treated for Vertigo."); Dkt. No. 25, p. 3 ("Ms. Strobert was on medical leave for Vertigo from January 6, 2014 to June 30, 2014 . . . . Due to her condition, Ms. Strobert received short-term disability.").

Defendant contends that vertigo is not an actual impairment under the ADA. Specifically, Defendant argues that any stipulation that Strobert work the day shift was only a recommendation, rather than a restriction. Dkt. No. 27, p. 2.

The Court must therefore determine whether Strobert's impairment limits substantially her ability to work.

The ADA does not clarify what it means for a "major life activity" to be "substantially limit[ed]." But the ADA's Regulations do. Those Regulations clarify that an individual's ability to work is "substantially limited" when that person is "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes." 29 C.F.R. § 1630.2(j)(3)(i)(2007). Just because an impairment affects a major life activity does not mean that impairment is per se substantially limiting. The Court looks to three factors in order to determine whether an individual is substantially limited: (1) the nature and severity of the impairment; (2) the duration or expected duration of the impairment; and (3) the permanent or long-term impact of the impairment. 29 C.F.R. § 1630.2(j)(2)(2007). The Regulations, too, clarify that an "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29 C.F.R. § 1630.2(j)(3)(2007).

Strobert argues that she is substantially limited in her ability to work because her health condition prevents her from working swing shifts. Dkt. No. 21-3, 75:8-17 (agreeing that the "swing shift would not work" for Strobert and that Strobert's "body would shut down" if forced to work both day and night

7

shifts while taking her prescribed medication.). Assuming this to be true, Strobert's inability to work swing shifts is not a substantial limitation on the major life activity of working.

That is not to say that Strobert's vertigo and migraines are not serious medical conditions: they have affected her life. Nevertheless, they do not rise to the level of a disability under the ADA. The inability to work a certain shift, by itself, does not constitute a disability. See, e.g. Mont-Ros v. City of W. Miami, 111 F. Supp. 2d 1338, 1353 (S.D. Fla. 2000) (holding that a police officer's inability to work the midnight shift was insufficient to establish a substantial limitation on a major life activity); Colwell v. Suffolk County Police Dept., 158 F.3d 635, 644-45 (2d Cir. 1998) (same); Roth v. Lutheran General Hosp., 57 F.3d 1446, 1454-55 (7th Cir. 1995) (holding that a surgeon's inability to work long shifts due to an eye condition does not rise to the level of disability under the ADA).

Many jobs are available that do not require working a swing shift. Strobert herself notes that she is able to work: that she understands the effects of her medicine and can work around those effects in order to perform her job functions. Dkt. No. 21-3, 97:10-15. Strobert's own arguments, supported by evidence in the record, do not indicate that she is restricted in her ability to perform "a class of jobs" or a "broad range of jobs

in various classes." The inability to perform a particular job cannot constitute a substantial limitation on the major life activity of working. 29 C.F.R. § 1630.2(j)(3)(i)(2007).

Because Strobert is able to perform a broad range of jobs that do not require a swing shift, she does not suffer from a substantial limitation on her ability to work as recognized by the ADA. Because she does not have a disability under the ADA, we need not proceed further to examine whether she was subjected to discrimination based on a disability. Cash v. Smith, 231 F.3d 1301, 1305 (11th Cir. 2000).

**II. Whether Plaintiff Was Obligated To Engage in an Interactive Process and Failed to Do So**

We therefore move to the second issue presented: whether Defendant or Plaintiff incurred liability from the breakdown in an interactive process relating to Strobert's return to work at Georgia Pacific. The answer is no.

The parties here engaged in an interactive process, but each blames the other for the breakdown of that process. On the one hand, Defendant argues that Plaintiff impeded that process by failing to respond to Defendant's requests for more information concerning her medical condition. Dkt. No. 27, pp. 4-5. On the other, Plaintiff asserts that Georgia Pacific obstructed the interactive process in two ways: (1) by seeking more information about her physician's recommendation, and (2)

assigning a new HR generalist to Strobert's case. Dkt. No. 25, p. 9.

An employer unlawfully discriminates under the ADA where the employer fails to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee." 42 U.S.C. § 12112(b)(5)(A). In some situations, the ADA's Regulations clarify, "it may be necessary for the [employer] to initiate an informal, interactive process with the [employee] with a disability in need of the accommodation" in order to identify the limitations of the disability and any accommodations that can reasonably be made by way of accommodation. 29 C.F.R. § 1630.2(o)(3)(2007).

Strobert argues that Georgia-Pacific caused a breakdown in the interactive process intended to identify an accommodation that might allow her to continue her position. See 29 C.F.R. § 1620.2(o)(3)(2007). But recall that the purpose of an interactive process is for an employer to identify their employee's disability and discern what reasonable accommodations may be made. 29 C.F.R. § 1630.2(o)(3)(2007). Strobert does not have a disability protected by the ADA, and therefore Georgia-Pacific had no obligation to engage in an interactive process, nor make reasonable accommodations. "[W]here a plaintiff cannot demonstrate 'reasonable accommodation,' the employer's lack of

investigation into reasonable accommodation is unimportant." Willis v. Conopco, Inc., 108 F.3d 282 (11th Cir. 1997). Strobert's contention that Georgia Pacific failed to engage in an interactive process "merely reclothes [her] ADA discrimination claim, which we have already rejected, and it fares no better in this garb." Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1261 (11th Cir. 2001).

As such, Georgia-Pacific cannot be held liable under the ADA for a breakdown in the interactive process. Strobert has been unable to show that she has a disability that substantially limits one of her major life activities. As such, Defendant has no obligation under the ADA to conduct an interactive process.

## CONCLUSION

For these reasons, Defendant Georgia-Pacific Consumer Products LP's ("Georgia-Pacific") Motion for Summary Judgment, dkt. no. 21, is **GRANTED**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**SO ORDERED**, this 1st day of August, 2018.

_____
HON. LISA GODBEY WOOD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA